IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL T. ROBINSON,          )
                              )
            Plaintiff,        )
                              )
      v.                      )     1:16CV408
                              )
NANCY BERRYHILL,              )
Acting Commissioner of Social Security )
Administration,               )
                              )
            Defendant.        )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Michael T. Robinson ("Plaintiff"), seeks review of a final decision of the Commissioner of Social Security denying his claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act").[1] The Court has before it the certified administrative record and cross-motions for judgment. (Docket Entries 8, 10, 12.) For reasons discussed below, it is recommended that Plaintiff's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be granted, and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB on or about January 24, 2008, alleging a disability onset date

---

[1] Nancy Berryhill recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

1

of July 2, 2006. (Tr. 138-141)[2] His application was denied initially and upon reconsideration. (*Id.* at 80-83, 85-88.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (*Id.* at 8-9.) Plaintiff, his attorney, and a vocational expert ("VE") appeared at the hearing on December 11, 2009. (*Id.* at 10-58.) A decision by the ALJ was issued on March 24, 2010, upholding the denial of Plaintiff's application for DIB. (*Id.* at 64-71.) On July 22, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (*Id.* at 1-3.)

Plaintiff then appealed to this Court, and by order dated June 18, 2014, the Court remanded the case to the Commissioner to determine if Plaintiff met Listing 1.04A in accordance with *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013). (Tr. 708-12.) After remanding this matter to the Commissioner, the Appeals Council noted that Plaintiff filed a subsequent application for Supplemental Security Income Benefits and was found disabled as of June 23, 2010. (*Id.* at 715.) Thus, upon remand, the ALJ was to consider the time period of Plaintiff's alleged onset date of July 2, 2006, through December 31, 2008, the date last insured. (*Id.* at 150, 642.) Plaintiff appeared for a subsequent hearing on September 14, 2015. (*Id.* at 664-706.) The same ALJ again rendered a decision finding that Plaintiff was not disabled. (*Id.* at 642-657.) Plaintiff again seeks review of the ALJ's decision from this Court.

---

[2] Transcript citations refer to the sealed administrative record which was filed with Defendant's Answer. (Docket Entry 8.)

2

## II. STANDARD OF REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson*, 402

U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

### III. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(a). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(2)(A).

#### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3).

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[5] ("RFC") and his vocational abilities. If so, the claimant is not disabled.

20 C.F.R. § 404.1520.

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 2, 2006, through his date last insured of December 31, 2008. (Tr. 645.) The ALJ next found in step two that Plaintiff had the following severe impairments: lumbar degenerative disc disease and spondylosis, hepatitis B and depression. (*Id.*). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.*) At step four,

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

the ALJ determined that Plaintiff could not return to his past relevant work as a route salesman and a retail store manager. (*Id.* at 655.) The ALJ then found that there were jobs in the national economy that Plaintiff could have performed through the date last insured. (*Id.*)

## B. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on the ALJ's evaluation of the evidence. (*Id.* at 648-654.) Reviewing the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform sedentary work, "except he [was] limited to occasional climbing, balancing, stooping, and crouching." (*Id.* at 648.) Furthermore, the ALJ indicated that Plaintiff "[was] limited to performing simple, routine and repetitive tasks in a stable environment at a nonproduction pace with occasional interpersonal interaction." (*Id.*)

## IV. ISSUES AND ANALYSIS

Plaintiff raises two issues on appeal. First, Plaintiff argues that the ALJ improperly applied Listing 1.04A to Plaintiff's case in violation of *Radford*. (Docket Entry 11 at 5-8.) Second, Plaintiff argues that the ALJ inadequately addressed the differences between the medical opinions of Plaintiff's treating orthopedic surgeon and his RFC. (*Id.* at 9-10.) For the reasons stated below, the Court concludes that Plaintiff's arguments fail.

### A. Listing 1.04A

Plaintiff argues that the ALJ's application of Listing 1.04A is flawed and that Plaintiff meets the requirements of the listing. (Docket Entry 11 at 5-8.) To satisfy Listing 1.04A, a plaintiff first must show that he suffers from a spinal disorder such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture." 20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.04. Second,

6

he must demonstrate that the above spinal condition results in "compromise of a nerve root (including the cauda equina) or the spinal cord." *Id.* Lastly, under 1.04A, he must show the following:

> A. Evidence of nerve root compression characterized by neuronatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* § 104.A. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Additionally, if the evidence fails to show that a claimant's impairment "has lasted or can be expected to last for a continuous period of at least 12 months," he will not be deemed disabled at this step. 20 C.F.R. § 404.1525(c)(4). The burden is on the claimant to demonstrate that he meets all the requirements of a Listing. *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016).

In addressing Listing 1.04A at step three, the ALJ considered *Radford* and discussed in considerable length Plaintiff's back impairment:

> A June 2006 MRI of the lumbar spine showed a right disc extrusion at L5-S1 with involvement and encroachment of the L5-S1 nerve root, disc bulging at L3-4 and L4-5 and multi-level facet arthrosis. Exhibit 2F/1. Accordingly, [Plaintiff] established evidence of nerve root compression/compromise at that time.
>
> Yet, the compromise of a nerve root did not last for 12 continuous months. Additionally, while the medical criteria required by this Listing were present during the months immediately before and after [Plaintiff's] accident and October 2006 surgery, they also did not last for 12 continuous months.

7

> The treatment records show significant improvement by around April 2007. In April 2007, [Plaintiff] used a cane to ambulate. Yet, he specifically denied any gait or dexterity problems. He had diffuse tenderness in the lumbosacral area, some weakness with dorsiflexion of the right foot, and positive straight leg raising. However, [Plaintiff] had normal lumbar range of motion, no instability and normal motor strength, reflex and sensation. Exhibit 4F/11. While in May 2007, [Plaintiff] had positive straight leg raising and decreased sensation in the right lower extremity, he had normal range of motion of the lumbar spine, normal motor strength and a normal gait. Moreover, Dr. [T. Scott] Ellison noted that an MRI of the lumbar spine dated April 22, 2007 showed disc space narrowing and post-operative changes at L5-S1, but there was no recurrent disc herniation, no significant neurocompressive phenomenon and no nerve root displacement. Exhibit 4F/13, 14. In September 2007, [Plaintiff] had tenderness and limited range of motion of the lumbar spine and positive straight leg raising, but no motor, sensory or reflex abnormalities. Exhibit 34F. In December 2007, [Plaintiff] had diffuse lumbar discomfort, pain with flexion and extension and positive straight leg raising. However, motor/muscle strength of the upper and lower extremities and reflexes were normal. Exhibit 35F. In June 2008, Dr. [Frank T.] Shafer reported that [Plaintiff] had limited range of motion and positive straight leg raising; however, sensory, reflex and motor exams were all normal. Exhibit 7F/2.
>
> Accordingly, while earlier MRI tests documented nerve root compression, by April 2007 and within 12 months of his July 2006 alleged onset date, an MRI no longer showed any significant neurocompressive phenomenon and no nerve root displacement. Moreover, while [Plaintiff] may have continued to suffer from consistent tenderness and limited range of motion of the lumbar spine and positive straight leg raising, the preponderance of the medical evidence also shows that within 12 months of his alleged onset date, he no longer suffered from the requisite motor, sensory or reflex abnormalities required to meet Section 1.04 of the Listings of Impairments.

(Tr. 646-47.)

A review of the entire record demonstrates that substantial evidence supports the ALJ's conclusion that Plaintiff did not meet Listing 1.04A. The ALJ considered the evidence in the

record, and determined that although Plaintiff's lumbar degenerative disc disease and spondylosis, hepatitis B and depression were severe impairments, his impairments individually or combined did not meet Listing 1.04A or any other listing. (*Id.* at 645-48.) It is the job of the ALJ to weigh evidence and resolve any evidentiary conflicts. To the extent Plaintiff asserts that medical evidence is present to support Listing 1.04A, the ALJ concluded otherwise, considering all evidence in the record, and his decision is supported by such evidence.

Plaintiff argues that he still suffered from nerve root compression after his October 2006 surgery, except that "it was just now due to the formation of excessive scar tissue as opposed to a disc fragment." (Docket Entry 11 at 6.) Indeed, the December 2006 medical evidence noted post-surgery "enhancing tissue in the right paracentral location . . . posteriorly displac[ing] the descending right S1 nerve root" and resulting in "moderate to severe right lateral recess stenosis." (Tr. 303-04.) However, an MRI in April 2007 no longer showed any recurrent disc herniation, no significant neurocompressive phenomenon, and no nerve root displacement on the right at S1. (*Id.* at 280.) This supports the ALJ's conclusion that Plaintiff's compromise of the nerve root was not present for 12 continuous months. Plaintiff also argues that the ALJ misapplied Listing 1.04A's clinical criteria in contravene to *Radford*. (Docket Entry 11 at 6-8.) However, the undersigned disagrees. The ALJ expressly referenced Plaintiff's continuous tenderness and limited range of motion of the lumbar spine and positive straight leg raising. (*Id.* at 647.) However, the ALJ also noted that Plaintiff did not, within 12 months of the alleged onset date, continue to have motor, sensory or reflex abnormalities required for Listing 1.04A. (*Id.*) Plaintiff has documented instances of normal muscle strength (*id.* at 267-69, 271, 273, 277, 279, 347, 824, 826), and intact sensation and normal reflexes (*id.*

at 277, 280, 347, 826). Thus, the ALJ's conclusion that Plaintiff does not meet Listing 1.04A is supported by substantial evidence. *Cattano v. Berryhill*, No. 15-55126, 2017 WL 1208593, at *1 (9th Cir. Apr. 3, 2017) ("[The plaintiff] did not meet all of the requirements for Listing 1.04, for disorders of the spine, because he is unable to point to evidence that he has suffered motor loss, sensory or reflex loss . . . for twelve continuous months."); *Carter v. Barryhill*, No. 1:15CV981, 2017 WL 1194732, at *3 (M.D.N.C. Mar. 31, 2017) (unpublished) ("There is nothing in the record regarding measurements in conjunction with assessment of muscle weakness or atrophy. Consequently, there is nothing in the record to support a finding of motor loss."); *Seaward v. Colvin*, No. CIV. TMD 12-3517, 2014 WL 5797716, at *7 (D. Md. Nov. 6, 2014) (unpublished) ("Plaintiff does not point to any evidence of any motor loss accompanied by sensory or reflex loss before his date last insured" to meet Listing 1.04A); *Callahan v. Colvin*, No. 7:13-CV-00132-RJ, 2014 WL 4843958, at *10 (E.D.N.C. Sept. 29, 2014) (unpublished) (finding that Claimant did not meet Listing 1.04A as "the medical records indicate that, despite Claimant's back injury, he consistently demonstrated normal motor and sensory function, reflexes, strength, and range of motion.").

Plaintiff's argument that the ALJ's conclusion runs afoul of *Radford* is without merit. In *Radford*, the Fourth Circuit rejected the Commissioner's attempt to read into Listing 1.04A by requiring a simultaneous or close proximity finding. 734 F.3d at 292-94. The Court held that "[a] claimant need not show that each symptom was present at precisely the same time— i.e., simultaneously—in order to establish the chronic nature of his condition. Nor need a claimant show that the symptoms were present in the claimant in particularly close proximity." *Id.* at 294. Here, unlike *Radford*, the ALJ did not require Plaintiff to show simultaneous

presentation of Listing 1.04A; rather, he found that Plaintiff no longer suffered from the Listing criteria for a period of 12 months within the alleged onset date. (Tr. 646-47.) Thus, the ALJ's findings are not inconsistent with *Radford*. *See Avant v. Colvin*, No. 1:14-CV-1562-SEB-DKL, 2016 WL 775924, at *6 (S.D. Ind. Feb. 1, 2016) (unpublished) (finding the plaintiff's *Radford* argument unpersuasive because the ALJ "found no evidence of motor deficits at any time and, while he found that the evidence showed that [the plaintiff] experienced muscle weakness, decreased reflexes, and decreased sensation for a few weeks, . . . . later tests showed much improvement after administration of a nerve block"), *report and recommendation adopted*, No. 114CV01562SEBDKL, 2016 WL 814965 (S.D. Ind. Feb. 19, 2016); *Pass v. Colvin*, No. CV 0:15-208-TLW-PJG, 2015 WL 9991455, at *15 (D.S.C. Nov. 24, 2015) (unpublished) ("Unlike *Radford,* the ALJ in this case found that [the plaintiff's] condition had resolved, not simply that his symptoms were not simultaneously present."), *report and recommendation adopted*, No. 0:15-CV-208-TLW, 2016 WL 403865 (D.S.C. Feb. 3, 2016).

### B. The Opinion of Dr. Ellison and Plaintiff's RFC

Plaintiff next argues that the ALJ inadequately addressed the differences between the medical opinions of Plaintiff's treating orthopedic surgeon and his RFC. (Docket Entry 11 at 9-10.) The "treating physician rule" generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2). An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. *Id.* § 404.1527(c)(2)-(6). These factors include: (i) the frequency of examination and the length,

11

nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.* § 404.1527(c)(2)-(6).

The ALJ has the exclusive duty of evaluating medical opinions and, as the finder of fact, the ultimate responsibility for determining a claimant's RFC is also reserved for the ALJ. 20 C.F.R. §§ 404.1527(d)(2) and (c)(2); *Koonce v. Apfel*, No. 98–1144, 166 F.3d 1209 (Table), 1999 WL 7864, at *4 (4th Cir. 1999) (unpublished). The RFC is the most a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). More specifically, the RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)." *Dunn v. Colvin*, 607 Fed. Appx. 264, 272 (4th Cir. 2015) (citation omitted).

Here, the ALJ considered the opinions of Dr. Ellison. (Tr. 652.) During a visit on December 27, 2006 (less than two month after Plaintiff's back surgery), Dr. Ellison noted that Plaintiff should remain out of work for the remainder of the year. (*Id.* at 275.) However, he limited Plaintiff to "work light duty, 5 pound lifting restrictions, sedentary, if available[,]" for the following year of 2007. (*Id.*) Dr. Ellison also made a similar 5-pound lifting restriction pre-surgery in July 2006. (*Id.* at 270.) In April and May 2007, Dr. Ellison continued to recommend that Plaintiff be restricted to light duty work with a 5-pound lifting restriction. (*Id.* at 278, 280.) However, in July 2007, Dr. Ellison stated that he concurred with Plaintiff's functional capacity evaluation ("FCE") which found that Plaintiff could perform sedentary

work with a 10-pound lifting restriction. (*Id.* at 282, 285.) Dr. Ellison also indicated that Plaintiff had reached maximum medical improvement. (*Id.* at 282.) The ALJ gave great weight to Dr. Ellison's opinion "as it [was] supported by his own treatment notes and by the preponderance of the other evidence in the record, including [Plaintiff's] activities of daily living." (*Id.* at 652.)

While Plaintiff contends that there is an inconsistency between Dr. Ellison's opinions and the RFC, a review of the record indicates that Dr. Ellison refined his opinion after Plaintiff completed the FCE and demonstrated his ability to perform sedentary work activities, including lifting up to 10 pounds. As such, in giving Dr. Ellison's opinion great weight, the ALJ considered Dr. Ellison's departure from the previous 5-pound lifting limitations noted in the treatment records. Dr. Ellison's July 2007 opinion was also consistent with Plaintiff's activities of daily living, including assisting with caring for his dog, occasionally helping with cleaning, preparing T.V. dinners, doing small loads of laundry, occasionally visiting friends, watching television, playing computer games, drawing and handling finances. (*Id.* at 173-78.) Additionally, in July 2008, Plaintiff reported that he enjoyed flying radio/remote control cars (*id.* at 406, 430), and in October 2008, Plaintiff reported that he was packing boxes and getting ready to move to a new home (*id.* at 450.) Having reviewed the evidence of record, the undersigned concludes that the ALJ's evaluation of Dr. Ellison's opinion is supported by substantial evidence and consistent with Plaintiff's RFC. Thus, this argument too fails. *See Johnson v. Colvin*, 640 F. App'x 770, 776 (10th Cir. 2016) (concluding that "[t]he records cited by [plaintiff] simply d[id] not demonstrate any error by the ALJ in relying on [treating physician] and at the same time finding an RFC for sedentary work."); *Thomas v. Astrue*, No.

1:10-CV-1777, 2011 WL 4496533, at *4 (N.D. Ohio Sept. 27, 2011) (unpublished) (finding that the plaintiff "ha[d] not identified any opinions of her treating physicians that [were] plainly at odds with the RFC.").

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment (Docket Entry 10) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be **GRANTED**, and the final decision of the Commissioner be upheld.

                                                 /s/ Joe L. Webster
                                                 Joe L. Webster
                                                 United States Magistrate Judge

August 7, 2017
Durham, North Carolina